BARRIENTOS PC
J. Alejandro Barrientos, SBN 346676
Alejandro@bts.law
145 S. Fairfax Avenue, Suite 200-152
Los Angeles, CA 90036
T. 626.551.4564
F. 626.427.6753

Attorney for Plaintiff
ANDRE LJUSTINA

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANDRE LJUSTINA, an individual,<br><br>Plaintiff,<br><br>v.<br><br>NIKE, INC., an Oregon corporation; KATHERINE KASO-HOWARD, an individual; MICHAEL ORNELAS, an individual; CITY OF LOS ANGELES, a public entity; LOS ANGELES POLICE DEPARTMENT, a public entity; MARC STERNIN, an individual; WALTER MCMAHON, an individual,<br><br>Defendants. | Case No. 26-cv-809<br><br>COMPLAINT FOR DAMAGES, DECLARATORY RELIEF, AND INJUNCTIVE RELIEF<br><br>1. Violation of the Fourth Amendment (42 U.S.C. § 1983)<br>2. Violation of the Fourth Amendment (42 U.S.C. § 1983)<br>3. Violation of the Fourth Amendment (42 U.S.C. § 1983)<br>4. Municipal liability under *Monell* (42 U.S.C. § 1983)<br>5. Municipal liability under *Monell* (42 U.S.C. § 1983)<br>6. Municipal liability under *Monell* (42 U.S.C. § 1983)<br>7. Civil Theft (Cal. Penal Code § 496(c))<br>8. Conversion<br><br>DEMAND FOR JURY TRIAL |

## **TABLE OF CONTENTS**

INTRODUCTION........................................................................................... 3

JURISDICTION & VENUE............................................................................ 4

PARTIES ....................................................................................................... 4

ALLEGATIONS OF FACT............................................................................ 6

    I.     Plaintiff Andre Ljustina devotes his life to building ProjectBlitz, a streetwear business that buys and sells shoes and other merchandise on the secondary market. ........................ 6

    II.    LAPD obtains a facially invalid warrant to search two warehouses where plaintiff stored millions of dollars of shoes and other merchandise.................................................................. 6

    III.   LAPD, with the assistance of Nike and other private companies, seize millions of dollars of merchandise from Ljustina without justification. ....................................................... 8

    IV.   Nike and LAPD's unlawful seizure of plaintiff's property destroys plaintiff's livelihood. ......................................................... 9

CAUSES OF ACTION................................................................................. 12

    CLAIM I - 42 U.S.C. § 1983 ................................................................. 12

    CLAIM II - 42 U.S.C. § 1983................................................................. 13

    CLAIM III - 42 U.S.C. § 1983 .............................................................. 15

    CLAIM IV - *Monell* & 42 U.S.C. § 1983.............................................. 17

    CLAIM V - *Monell* & 42 U.S.C. § 1983 .............................................. 18

    CLAIM VI - *Monell* & 42 U.S.C. § 1983............................................. 19

    CLAIM VII - CIVIL THEFT, CAL. PENAL CODE § 496(c) ................ 20

    CLAIM VIII - CONVERSION .............................................................. 21

PRAYER FOR RELIEF............................................................................... 22

DEMAND FOR JURY TRIAL.................................................................... 24

**COMPLAINT**

**INTRODUCTION**

1.    Andre Ljustina is a law-abiding, taxpaying California business owner whose business, Project Blitz, purchases and resells designer shoes and luxury items on the secondary market. Prior to the events underlying this case, Project Blitz had six full-time employees and generated between $10 and $12 million in gross revenue per year. Its inventory included millions of dollars of Nike merchandise, as well as luxury items from brands such as Louis Vuitton, Burberry, Gucci, and Chanel.

2.    Project Blitz's business has ground to a nearly complete halt since 2024, when the Los Angeles Police Department ( "LAPD"), Nike, Inc., and their respective employees illegally seized more than 5,000 pieces of merchandise that Ljustina stored at two warehouses in the Los Angeles area.

3.    The basis of the seizure was an alleged scheme to steal "unreleased footwear" from a Nike distribution center in Tennessee from June of 2023 to January of 2024.

4.    Though the basis for the warrant was narrowly focused on a mid-2023 scheme to steal unreleased Nike footwear, LAPD, Nike, Inc., and/or their respective employees seized large volumes of Nike and non-Nike merchandise that was obviously not unreleased Nike footwear as of mid-2023—including Louis Vuitton, Burberry, Gucci, and Chanel merchandise, non-footwear Nike merchandise, and Nike footwear that was released years prior to the alleged scheme to steal unreleased Nike footwear.

5.    In doing so, LAPD, Nike, Inc., and their respective employees violated plaintiff's constitutional rights and caused tens of millions of dollars in damages, including by depriving plaintiff of millions of dollars of

merchandise and effectively destroying an ongoing business capable of generating more than $10 million per year

6.    Plaintiff seek the return of his property and fair compensation for his injuries.

## JURISDICTION & VENUE

7.    This case is properly heard in United States District Court under federal question jurisdiction, pursuant 28 U.S.C. § 1331, as it is a civil suit which presents questions arising exclusively under federal law.

8.    The Court has supplemental jurisdiction of plaintiffs' state law claims pursuant 28 U.S.C. § 1367 because the state law claims are so related to plaintiffs' federal claims that they form part of the same case or controversy under Article III of the United States Constitution.

9.    Venue is proper within the Central District of California pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions giving rise to plaintiffs' claims occurred within the Central District of California.

## PARTIES

10.    Plaintiff Andre Ljustina is and was at all relevant times a resident of California.

11.    Defendant Nike, Inc. ("Nike") is an Oregon corporation with its principal place of business in Oregon.

12.    Defendant Katherine Kaso-Howard was at all relevant times an employee of Nike, namely Assistant General Counsel. Kaso-Howard is a resident of California.

13.    Defendant Michael Ornelas was at all relevant times an employee of Nike, namely Director of Global Investigations. Ornelas is a resident of Oregon.

4

14.    Defendant City of Los Angeles ("the City") is a public entity with the capacity to sue and be sued. At all relevant times, the City is and was responsible for assuring that the actions, omissions, policies, procedures, practices and customs of its agencies, agents, and employees, including the Los Angeles Police Department, complied with the laws and the Constitution of the United States.

15.    Defendant Los Angeles Police Department ("LAPD") is a public entity with the capacity to sue and be sued.[1] At all relevant times, defendant LAPD was responsible for law enforcement services in the City of Los Angeles, California.

16.    Defendant Marc Sternin was employed as a detective by the City and LAPD at all relevant times and was authorized by the City and LAPD to perform the duties and responsibilities of sworn officers of the LAPD. Det. Sternin is a resident of California.

17.    Defendant Walter McMahon was employed as a detective by the City and LAPD at all relevant times and was authorized by the City and LAPD to perform the duties and responsibilities of sworn officers of the LAPD. McMahon is a resident of California.

---

[1] The Ninth Circuit has held that California law permits § 1983 claims against municipal police departments. *See Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 624 n. 2 (9th Cir. 1988) ("Municipal police departments are 'public entities' under California law and, hence, can be sued in federal court for alleged civil rights violations.); *see also Duarte v. City of Stockton*, 60 F.4th 566, 568 (9th Cir. 2023) ("Duarte's municipal liability claims were also rejected as improperly filed against defendants who were not 'persons.' But longstanding precedent establishes that both California municipalities and police departments are 'persons' amenable to suit under § 1983.").

5

18. At all relevant times, each and every defendant was acting under color of law.

## ALLEGATIONS OF FACT

### I. Plaintiff Andre Ljustina devotes his life to building ProjectBlitz, a streetwear business that buys and sells shoes and other merchandise on the secondary market.

19. Plaintiff Andre Ljustina has dedicated most of his life to "sneaker" culture, which centers on the collection, appreciation, and trade of athletic and lifestyle footwear, particularly limited-edition sneakers produced by major brands such as Nike, Adidas, and Jordan Brand. Participants in sneaker culture value shoes not only for functional use, but also for their design, historical significance, cultural symbolism, and resale value.

20. Ljustina has collected and traded shoes and apparel since he was a teenager. He formed Project Blitz in 2012 so he could turn his lifelong passion into a career. From 2012 to 2024, he built Project Blitz into a multi-million dollar business with clientele that included professional athletes, hip hop artists, and other celebrities. His business relied heavily on client relationships and goodwill.

21. Ljustina was extraordinarily successful at building such relationships and goodwill. In fact, he was such a powerful force in sneaker culture that defendant Nike previously collaborated with him to promote its products.

### II. LAPD obtains a facially invalid warrant to search two warehouses where plaintiff stored millions of dollars of shoes and other merchandise.

22. On January 26, 2024, LAPD Detective Marc Sternin applied for a warrant to search two warehouses in Los Angeles County where Ljustina and

6

kept thousands of items of Nike and non-Nike merchandise that were worth millions of dollars.

23. Importantly, Det. Sternin's warrant affidavit did not claim that the entirety of Ljustina's business operation was illegitimate.

24. To the contrary, the affidavit asserted that in the six-month period from June of 2023 to January of 2024, Nike employees at a Nike distribution center in Tennessee engaged in a scheme to steal "unreleased [Nike] footwear" by misdirecting it from its intended recipients to an individual named Roy Lee Harvey, Jr., in the Los Angeles area (the "Harvey scheme").

25. The warrant affidavit did not claim that Harvey, or anyone else, had stolen or possessed stolen non-Nike merchandise.

26. The warrant nonetheless purported to authorize "any peace officer in the County of Los Angeles" to search for and seize a wide variety of items having nothing to do with the Harvey scheme alleged in Det. Sternin's affidavit, namely "any products identified as stolen, all retail products, not limited to electronics, televisions, gaming consoles, bicycles, both electric and manual, clothing, shoes, accessories, large and small appliances, solar panels, copper wire, vehicle accessories, motor oil, tires, purses, food, beverages (alcoholic and non-alcoholic), energy drinks, any small appliances such as baking and convention ovens, microwave ovens, air fryers, coffee or expresso makers, extractors and/or juicers, blenders, mixers or peelers, and food processors."

27. The warrant directed the executing "peace officer[s]" to "bring [any seized items] forthwith before [the magistrate who approved the warrant], or this court [Superior Court for the County of Los Angeles], at the courthouse of this court."

7

28. The warrant did not authorize any "peace officer"—or any other person—to abscond from the State of California with any seized items.

### III. LAPD, with the assistance of Nike and other private companies, seizes millions of dollars of merchandise from Ljustina without justification.

29. On January 27, 2024, LAPD officers, including Det. Sternin and LAPD Detective Walter McMahon, went to the plaintiff's warehouses to execute the search warrant.

30. The warehouses contained more than 5,000 items of Nike and non-Nike merchandise that were collectively worth millions of dollars.

31. LAPD was accompanied by employees or agents of Nike, including defendant Michael Ornelas.

32. At LAPD's direction, Nike employees or agents, including Ornelas, seized all of plaintiff's Nike- and Converse-branded merchandise (collectively, "Nike merchandise"),[2] loaded the merchandise into trucks controlled by Nike, and transported the merchandise out of California to Nike facilities in Beaverton, Oregon.

33. Much of the Nike merchandise plainly had no connection to the Harvey scheme to steal "unreleased footwear" from Nike's distribution center in mid-2023. Most obviously, Nike took non-shoe items, such as jackets and a wooden memorabilia box from plaintiff's warehouses. As for the seized shoes, many of them were years old and therefore substantially pre-dated the alleged Harvey scheme. Some items were signed by famous athletes, such as former Los Angeles Laker Kobe Bryant, who had died years before the Harvey scheme allegedly commenced. All of these items, among others, were

---

[2] Nike owns the Converse brand.

8

obviously not "unreleased footwear" as of 2023. LAPD, Nike, and their respective employees nonetheless conspired and acted to seize all the Nike merchandise at the plaintiff's warehouses.

34. Moreover—even though the warrant affidavit related only to an alleged 6-month scheme to steal unreleased Nike footwear—LAPD, including defendants Det. Sternin and Det. McMahon, seized large amounts of non-Nike merchandise from the warehouses, including merchandise by Louis Vuitton, Gucci, Chanel, and Burberry.

35. They seized this non-Nike merchandise without any grounds to believe it was stolen property.

36. Indeed, Det. Sternin admitted that LAPD had no basis to determine whether the non-Nike merchandise was stolen.

37. LAPD, including defendants Det. Sternin and Det. McMahon, nonetheless seized the non-Nike merchandise and contacted the companies that manufactured or sold the merchandise so company representatives could evaluate whether the merchandise might be stolen.

**IV.     Nike and LAPD's unlawful seizure of plaintiffs' property destroys plaintiffs' livelihood.**

38. LAPD and Nike's illegal actions immediately devastated Ljustina's business.

39. LAPD took to social media almost immediately. Days after the search—and before Nike could even review the Nike merchandise to determine whether it might be stolen—LAPD announced on the social media platform "X" that it had seized millions of dollars of supposedly stolen Nike merchandise from the Ljustina's warehouses. The story was picked up by the news media, including the Los Angeles Times in a news piece that identified Ljustina by name.

40. Plaintiff's business deteriorated as news of LAPD's search of the his warehouses spread. Prior to the seizure, plaintiff could bring in millions of dollars of gross revenue per month. But, deprived of inventory, business ground to a halt. Moreover, plaintiff's business partners became wary of associating with plaintiff for fear of being connected to stories of stolen merchandise. And the companies associated with the merchandise seized from the plaintiff's warehouses effectively blacklisted plaintiff, preventing him from making further purchases, returns, or other deals with the companies.

41. Ljustina hired a law firm ("prior counsel") to seek return of the seized property under Cal. Penal Code § 1540 by filing a motion in the Superior Court for the County of Los Angeles.

42. LAPD returned plaintiff's non-Nike merchandise before the motion could be decided because it determined that the non-Nike merchandise was not stolen property. But the damage was already done. The property was in worse condition than when it was seized. Among other things, LAPD removed many items from branded packaging and returned them in generic plastic bags, which diminished the value of the items. Moreover, plaintiff had already incurred attorney fees due to the motion for return of property in Superior Court.

43. As plaintiff's prior counsel attempted to negotiate the return of plaintiff's property, it became clear that LAPD and Nike were wrongfully withholding at least a portion of the Nike merchandise from plaintiff even though LAPD and Nike knew the merchandise was not stolen via the Harvey scheme or otherwise.

44. Det. Sternin stated in a February 1, 2024, email to Ljustina's prior counsel that "[i]t does appear that at least a portion of the Nike items were

10

part of Mr. Ljustina's personal collection or were second-hand items," *i.e.*, the items had no relation to the Harvey scheme to steal "unreleased footwear" from Nike in mid-2023.

45. Further, Det. Sternin stated in a February 8, 2024, email to Ljustina's prior counsel that "some items . . . were subsequently determined by Nike to likely not be stolen property, as told to the LAPD by Nike."

46. But Det. Sterning went on to insist that LAPD could not return the Nike merchandise and that "[plaintiffs'] efforts to get the Nike items returned should be directed solely to Nike."

47. Nike sang a different tune. Its then-Assistant General Counsel Katherine Kaso-Howard insisted to plaintiff's prior counsel that Nike was holding and reviewing the Nike merchandise at the direction of LAPD and the Los Angeles County District Attorney's Office and could not return the property.

48. The Superior Court ultimately issued an oral ruling denying the motion for return of property without prejudice, which has no *res judicata* effect under California law. *See Egelston v. State Pers. Bd.*, 112 Cal. App. 5th 1050, 1056 (2025). Plaintiff petitioned for a writ of mandate in the Second Appellate District of the Court of Appeal of the State of California. The appellate court issued a summary denial of the petition, which also has no *res judicata* effect under California law. *Kowis v. Howard*, 3 Cal. 4th 888, 899 (1992). Plaintiff petitioned the Supreme Court of California for review, but the petition for review was summarily denied.

11

## CAUSES OF ACTION

### CLAIM I - 42 U.S.C. § 1983

*Violation of the Fourth Amendment – Search and seizure pursuant to facially invalid warrant without probable cause*

*Against all individual defendants*

49.    Plaintiff re-alleges and incorporates herein by reference each and every allegation and statement contained in each and every preceding paragraph of this complaint as though fully set forth herein.

50.    This cause of action arises under the Fourth and Fourteenth Amendments to the U.S. Constitution, as well as 42 U.S.C. § 1983.

51.    At all relevant times, defendants Katherine Kaso-Howard, Michael Ornelas, Marc Sternin and Walter McMahon acted under color of law. Defendants Sterning and McMahon acted in their capacities as LAPD detectives. Kaso-Howard, and Ornelas performed a public function by executing a search and seizure pursuant to a warrant directed to "any peace officer in the County of Los Angeles"; engaged in joint action with LAPD; and were acting at the direction of LAPD and the Los Angeles County District Attorney's Office.

52. At all relevant times, the Fourth Amendment to the U.S. Constitution applied to defendants Katherine Kaso-Howard, Michael Ornelas, Marc Sternin and Walter McMahon through the Fourteenth Amendment to the U.S. Constitution. The Fourth Amendment provides in relevant part that "[t]he right of the people to be secure in their persons . . . against unreasonable searches and seizures, shall not be violated . . . ."

53.    Defendants Katherine Kaso-Howard, Michael Ornelas, Marc Sternin and Walter McMahon violated plaintiff's Fourth Amendment rights

12

by searching and seizing plaintiff's property without probable cause and pursuant to a facially invalid warrant.

54. By their actions, defendants Katherine Kaso-Howard, Michael Ornelas, Marc Sternin, and Walter McMahon caused plaintiff injury, including depriving him of property, depriving him of profits from the sale of such property, damaging business relationships and goodwill, causing plaintiff to incur substantial attorney fees, and causing severe emotional pain and suffering, for which plaintiff is entitled to compensation.

55. Defendants Katherine Kaso-Howard, Michael Ornelas, Marc Sternin and Walter McMahon acted oppressively and with malicious intent and callous indifference to plaintiff's Fourth Amendment rights. Plaintiff is therefore entitled to recover punitive damages.

### CLAIM II - 42 U.S.C. § 1983

*Violation of the Fourth Amendment –*

*Retention of property after justification has ended*

*Against all individual defendants*

56. Plaintiff re-alleges and incorporates herein by reference each and every allegation and statement contained in each and every preceding paragraph of this complaint as though fully set forth herein.

57. This cause of action arises under 42 U.S.C. § 1983 and the Fourth Amendment to the United States Constitution.

58. At all relevant times, defendants Katherine Kaso-Howard, Michael Ornelas, Marc Sternin and Walter McMahon acted under color of law. Defendants Sterning and McMahon acted in their capacities as LAPD detectives. Kaso-Howard, and Ornelas performed a public function by executing a search and seizure pursuant to a warrant directed to "any peace officer in the County of Los Angeles"; engaged in joint action with LAPD by

13

accompanying LAPD to the search of plaintiffs' warehouses; and were acting at the direction of LAPD and the Los Angeles County District Attorney's Office.

59. At all relevant times, the Fourth Amendment to the U.S. Constitution applied to defendants Katherine Kaso-Howard, Michael Ornelas, Marc Sternin and Walter McMahon through the Fourteenth Amendment to the U.S. Constitution.

60. The Fourth Amendment provides in relevant part that "[t]he right of the people to be secure in their persons . . . against unreasonable searches and seizures, shall not be violated . . . ."

61. The Fourth Amendment prohibits government actors from retaining a person's property after the justification for the initial seizure of the property has ended. *Brewster v. Beck*, 859 F.3d 1194, 1197 (9th Cir. 2017).

62. To the extent the seizure of plaintiff's property was ever justified (it was not), defendants Katherine Kaso-Howard, Michael Ornelas, Marc Sternin and Walter McMahon violated plaintiff's Fourth Amendment rights by continuing to retain plaintiff's property after they determined that the property was not stolen. Indeed, to this day, defendants Katherine Kaso-Howard, Michael Ornelas, Marc Sternin and Walter McMahon have not returned any of the more than 5,000 pairs of Nike shoes seized from plaintiff—even though it was determined in early February of 2024 that at least some of those items were not stolen property.

63. By their actions, defendants Katherine Kaso-Howard, Michael Ornelas, Marc Sternin, and Walter McMahon caused plaintiff injury, including depriving him of property, depriving him of profits from the sale of such property, damaging business relationships and goodwill, causing

plaintiff to incur substantial attorney fees, and causing severe emotional pain and suffering, for which plaintiff is entitled to compensation.

64.    Defendants Katherine Kaso-Howard, Michael Ornelas, Marc Sternin and Walter McMahon acted oppressively and with malicious intent and callous indifference to plaintiff's Fourth Amendment rights. Plaintiff is therefore entitled to recover punitive damages

## CLAIM III - 42 U.S.C. § 1983

*Violation of the Fourth Amendment –*

*Unreasonably long search of property*

*Against all individual defendants*

65.    Plaintiff re-alleges and incorporates herein by reference each and every allegation and statement contained in each and every preceding paragraph of this complaint as though fully set forth herein.

66.    This cause of action arises under the Fourth and Fourteenth Amendments to the U.S. Constitution, as well as 42 U.S.C. § 1983.

67.    At all relevant times, defendants Katherine Kaso-Howard, Michael Ornelas, Marc Sternin and Walter McMahon acted under color of law. Defendants Sterning and McMahon acted in their capacities as LAPD detectives. Kaso-Howard, and Ornelas performed a public function by executing a search and seizure pursuant to a warrant directed to "any peace officer in the County of Los Angeles"; engaged in joint action with LAPD by accompanying LAPD to the search of plaintiffs' warehouses; and were acting at the direction of LAPD and the Los Angeles County District Attorney's Office.

68. At all relevant times, the Fourth Amendment to the U.S. Constitution applied to defendants Katherine Kaso-Howard, Michael

15

Ornelas, Marc Sternin and Walter McMahon through the Fourteenth Amendment to the U.S. Constitution.

69. The Fourth Amendment provides in relevant part that "[t]he right of the people to be secure in their persons . . . against unreasonable searches and seizures, shall not be violated . . . ."

70. "[A] seizure reasonable at its inception because based upon probable cause may become unreasonable as a result of its duration." *Segura v. United States*, 468 U.S. 796, 812 (1984)

71. To the extent the seizure of plaintiff's property was ever justified (it was not), defendants Katherine Kaso-Howard, Michael Ornelas, Marc Sternin and Walter McMahon violated plaintiff's Fourth Amendment rights by searching the property seized from plaintiff's warehouses for an unreasonably long time.

72. By their actions, defendants Katherine Kaso-Howard, Michael Ornelas, Marc Sternin, and Walter McMahon caused plaintiff injury, including depriving him of property, depriving him of profits from the sale of such property, damaging business relationships and goodwill, causing plaintiff to incur substantial attorney fees, and causing severe emotional pain and suffering, for which plaintiff is entitled to compensation.

73. Defendants Katherine Kaso-Howard, Michael Ornelas, Marc Sternin and Walter McMahon acted oppressively and with malicious intent and callous indifference to plaintiff's Fourth Amendment rights. Plaintiff is therefore entitled to recover punitive damages.

16

## CLAIM IV - *Monell* & 42 U.S.C. § 1983

*Municipal liability for search and seizure pursuant to facially invalid warrant facially invalid warrant without probable cause*

*Against the City, LAPD, and Nike*

74.    Plaintiff re-alleges and incorporates herein by reference each and every allegation and statement contained in each and every preceding paragraph of this complaint as though fully set forth herein.

75.    The City, LAPD, and Nike have official or de facto policies, customs, or procedures of executing facially invalid search warrants without probable cause. Such policies, customs, or practices were adopted by the City, LAPD, and Nike with deliberate indifference to the Fourth Amendment rights of plaintiff and were a moving force behind the search of plaintiff's warehouses and seizure of plaintiff's property without probable cause.

76.    Final policymakers within LAPD, the City, and Nike approved and ratified the search of plaintiff's warehouses and seizure of plaintiff's property pursuant to a facially invalid warrant without probable cause. Such approvals and ratifications were done with deliberate indifference to the Fourth Amendment rights of plaintiff, and were a moving force behind the execution of the facially invalid search warrant without probable cause.

77.    Defendants City, LAPD, and Nike failed to train its employees and agents, including defendants Katherine Kaso-Howard, Michael Ornelas, Marc Sternin and Walter McMahon. Such failure was done with deliberate indifference to the Fourth Amendment rights of plaintiff, and was a moving force behind the search of plaintiff's warehouses and seizure of plaintiff's property pursuant to a facially invalid search warrant without probable cause.

17

78.    By their actions, the City, LAPD, and Nike caused plaintiff injury, including depriving them of property, depriving him of profits from the sale of such property, damaging business relationships and goodwill, causing plaintiff to incur substantial attorney fees, and causing severe emotional pain and suffering, for which plaintiff is entitled to compensation.

79.    Nike acted with malicious intent and with reckless and callous indifference to the constitutional rights of plaintiff. Plaintiff is therefore entitled to recover punitive damages against Nike.

**CLAIM V - *Monell* & 42 U.S.C. § 1983**

*Municipal liability for retention of property after justification has ended*

*Against the City, LAPD, and Nike*

80.    Plaintiff re-alleges and incorporates herein by reference each and every allegation and statement contained in each and every preceding paragraph of this complaint as though fully set forth herein.

81.    The City, LAPD, and Nike have official or de facto policies, customs, or procedures of retaining property after the justification for the initial seizure of the property has ceased in violation of the Fourth Amendment. Such policies, customs, or practices were adopted by the City, LAPD, and Nike with deliberate indifference to the Fourth Amendment rights of plaintiff and were a moving force behind the retention of plaintiff's property after the justification for the initial seizure of the property ceased.

82.    Final policymakers within LAPD, the City, and Nike approved and ratified the retention of plaintiff's property after the justification for the initial seizure of the property ceased. Such approvals and ratifications were done with deliberate indifference to the Fourth Amendment rights of plaintiff, and were a moving force behind the retention of plaintiff's property after the justification for the initial seizure of the property ceased.

83.     Defendants City, LAPD, and Nike failed to train its employees and agents, including defendants Katherine Kaso-Howard, Michael Ornelas, Marc Sternin and Walter McMahon. Such failure was done with deliberate indifference to the Fourth Amendment rights of plaintiff, and was a moving force behind the retention of plaintiff's property after the justification for the initial seizure of the property ceased.

84.     By their actions, the City, LAPD, and Nike caused plaintiff injury, including depriving them of property, depriving him of profits from the sale of such property, damaging business relationships and goodwill, causing plaintiff to incur substantial attorney fees, and causing severe emotional pain and suffering, for which plaintiff is entitled to compensation.

85.     Nike acted with malicious intent and with reckless and callous indifference to the constitutional rights of plaintiff. Plaintiff is therefore entitled to recover punitive damages against Nike.

### CLAIM VI - *Monell* & 42 U.S.C. § 1983

*Municipal liability for unreasonably long search of property*

*Against the City, LAPD, and Nike*

86.     Plaintiff re-alleges and incorporates herein by reference each and every allegation and statement contained in each and every preceding paragraph of this complaint as though fully set forth herein.

87.     The City, LAPD, and Nike have official or de facto policies, customs, or procedures of engaging in unreasonably long searches of property in violation of the Fourth Amendment. Such policies, customs, or practices were adopted by the City, LAPD, and Nike with deliberate indifference to the Fourth Amendment rights of plaintiff, and were a moving force behind the unreasonably long search of plaintiff's property conducted by defendants

Katherine Kaso-Howard, Michael Ornelas, Marc Sternin and Carlos Moterroso.

88. Final policymakers within LAPD, the City, and Nike approved and ratified the unreasonably long search of plaintiff's property. Such approvals and ratifications were done with deliberate indifference to the Fourth Amendment rights of plaintiff and were a moving force behind the unreasonably long search of plaintiff's property.

89. Defendants City, LAPD, and Nike failed to train its employees and agents, including defendants Katherine Kaso-Howard, Michael Ornelas, Marc Sternin and Walter McMahon. Such failure was done with deliberate indifference to the Fourth Amendment rights of plaintiff, and was a moving force behind the unreasonably long search of plaintiffs' property.

90. By their actions, the City, LAPD, and Nike caused plaintiff injury, including depriving them of property, depriving him of profits from the sale of such property, damaging business relationships and goodwill, causing plaintiff to incur substantial attorney fees, and causing severe emotional pain and suffering, for which plaintiff is entitled to compensation.

91. Nike acted with malicious intent and with reckless and callous indifference to the constitutional rights of plaintiff. Plaintiff is therefore entitled to recover punitive damages against Nike.

### CLAIM VII – Civil Theft, Cal. Penal Code § 496(c)

*Against Nike, Katherine Kaso-Howard, and Michael Ornelas*

92. Plaintiff re-alleges and incorporates herein by reference each and every allegation and statement contained in each and every preceding paragraph of this complaint as though fully set forth herein.

93. This cause of action arises under Cal. Penal Code § 496(c).

94. Nike, Katherine Kaso-Howard, and Michael Ornelas received and withheld plaintiffs' Nike merchandise knowing that it had been stolen from plaintiffs' warehouses and absconded with out of California to Oregon in violation of the search warrant that commanded "any peace officer" in Los Angeles to take seized items to the magistrate or Superior Court in Los Angeles.

95. Plaintiffs' property was obtained by theft because it was taken without plaintiffs' consent with the intent to deprive plaintiffs of their property permanently or for an extended period of time.

96. By their actions, Nike, Katherine Kaso-Howard, and Michael Ornelas caused plaintiffs injury, including depriving them of property, depriving them of profits from the sale of such property, damaging business relationships and goodwill, causing plaintiffs to incur substantial attorney fees, and causing severe emotional pain and suffering, for which plaintiffs are entitled to compensation.

97. Plaintiffs are entitled to treble damages, the costs of this suit, and reasonable attorney fees.

## CLAIM VIII - Conversion

*Against Nike, Katherine Kaso-Howard, and Michael Ornelas*

98. Plaintiff re-alleges and incorporates herein by reference each and every allegation and statement contained in each and every preceding paragraph of this complaint as though fully set forth herein.

99. This cause of action arises under California law of conversion.

100. Nike, Katherine Kaso-Howard, and Michael Ornelas substantially interfered with plaintiffs' ownership and right to possess the Nike merchandise seized from plaintiffs' warehouses. Indeed, Nike, Katherine Kaso-Howard, and Michael Ornelas knowingly and intentionally

21

took possession of such merchandise without plaintiffs' consent and have knowingly and intentionally refused to return the Nike merchandise to plaintiffs since it was seized almost two years ago.

101. By their actions, Nike, Katherine Kaso-Howard, and Michael Ornelas caused plaintiffs injury, including depriving them of property, depriving them of profits from the sale of such property, damaging business relationships and goodwill, causing plaintiffs to incur substantial attorney fees, and causing severe emotional pain and suffering, for which plaintiffs are entitled to compensation.

## **PRAYER FOR RELIEF**

102. Plaintiffs request entry of judgment in their favor and against defendants, including:

a.    Monetary damages in amounts to be determined by a jury;

b.    Non-economic damages in an amount to be determined by a jury;

c.    Treble damages against Nike, Katherine Kaso-Howard, and Michael Ornelas

d.    Punitive damages, except against the City and LAPD;

e.    All other damages, penalties, costs, interest, and attorney fees allowed by 42 U.S.C. § 1983;

f.    Attorney's fees and all other available relief under 42 U.S.C. § 1988(b);

g.    All other damages, penalties, costs, interest, and attorney fees allowed by Cal. Penal Code § 496(c)

h.    Interest;

i.    Return of plaintiffs' property;

j.    A declaration that plaintiff's own or have the right to possess the Nike merchandise;

22

k.    An injunction preventing defendants from withholding the Nike merchandise from plaintiffs; and

l.    Any other remedy deemed appropriate by the Court.

Respectfully submitted,

Dated:  January 26, 2026        BARRIENTOS PC

*/s/ J. Alejandro Barrientos*

J. Alejandro Barrientos
Attorney for Plaintiff,
Andre Ljustina

23

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury on all claims for relief alleged herein.

Respectfully submitted,

Dated:  January 26, 2026          BARRIENTOS PC

*/s/ J. Alejandro Barrientos*
_____
J. Alejandro Barrientos
Attorney for Plaintiff,
Andre Ljustina

24